UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIOVANNY HERNAN ORTEGA,<br><br>Petitioner-Plaintiff,<br><br>v.<br><br>POLLY KAISER, et al.,<br><br>Respondents-Defendants. | Case No. 25-cv-05259-JST<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION**<br><br>Re: ECF No. 11 |

Before the Court is Petitioner-Plaintiff Giovanny Hernan Ortega's motion for preliminary injunction.[1] ECF No. 11. The Court will grant the motion.

## I. BACKGROUND

### A. Factual Background

Ortega was born in El Salvador and has resided in the United States since 1990 when he entered as a derivative asylee through his mother's approved asylum application. ECF No. 1 ¶¶ 39–41. As a young teenager, he became involved in gang activity, and in 1993 when he was 16 years old, he participated in a drive-by shooting of rival gang members. *Id.* ¶ 43. He pled guilty to seven counts of attempted murder and served a combined 24 years in juvenile hall, county jail, and prison. *Id.* ¶¶ 43–46. On April 20, 2017, Ortega finished his criminal sentence and was transferred into ICE custody. *Id.* ¶ 47. He spent nine months in immigration custody before being released on bond on January 31, 2018. *Id.* ¶¶ 51–52. He was granted release on bond after an Immigration Judge ("IJ") found that he was neither a danger to the community nor a

---

[1] The motion was originally filed as a motion for temporary restraining order, ECF Nos. 4, 11, but was converted to a motion for preliminary injunction with the parties' consent: Plaintiff consented at the hearing held July 30, 2025, and the government subsequently consented in writing, ECF No. 22.

flight risk. *Id.* ¶ 51. On December 21, 2022, an immigration judge issued a final removal order in Ortega's removal proceedings and simultaneously ordered that his removal to El Salvador be deferred pursuant to the Convention Against Torture ("CAT"). *Id.* ¶ 67. The final removal order and its deferral remain in effect.

Since his release on bond in 2018, Ortega has resided in Arcata, California, with his wife of 24 years; has had no new arrests, convictions, or other contact with the criminal justice system; and has complied with all the requirements of his parole and the DHS Intensive Supervision Appearance Program ("ISAP"). *Id.* ¶¶ 44, 53–54. He has worked for several years at Adventure's Edge, an outdoor store in Arcata where he now serves as the manager and lead bike mechanic. *Id.* ¶ 75. He also "volunteers his time teaching high school students and Native youth how to maintain their bikes." *Id.* He has provided letters of support from the mayor of Arcata, a member of the Humboldt County Board of Supervisors, and more than a dozen community members, all of whom extol his personal character, his contributions to the community, and his wife's reliance on him during her ongoing treatment for breast cancer. *See* ECF No. 10-3 at 25–80.

On March 17, 2023, Immigration and Customs Enforcement ("ICE") cancelled the bond Ortega paid in 2018, finding that the conditions of the bond had been satisfied, and ordered Ortega to report annually to ICE's San Francisco Field Office. *Id.* ¶¶ 72–73. Ortega accordingly appeared at the office in March 2024. *Id.* Before his March 2025 appearance date, Ortega sought—and was granted—a postponement because the original date conflicted with his wife's medical appointments. *Id.* ICE rescheduled his in-person reporting date to July 9, 2025. *Id.*

**B.    Procedural History**

On June 23, 2025, Ortega filed a petition for writ of habeas corpus, ECF No. 1, and motion for temporary restraining order, ECF No. 4. Ortega seeks an order enjoining Respondents-Defendants ICE San Francisco Field Office Acting Director Polly Kaiser, ICE Acting Director Todd Lyons, DHS Secretary Kristi Noem, and United States Attorney General Pamela Bondi "re-detaining him while he proceeds with his claims before this Court." ECF No. 4 at 5.

On June 23, 2025, Ortega's counsel also served a copy of the motion for temporary

2

restraining order by email on the Chief of the Civil Decision of the U.S. Attorney's Office.[2] ECF No. 4 at 5. On June 24, 2025, Assistant United States Attorney Ken Brakebill sent an email to the Court, copying Ortega's counsel, advising that the United States had received Ortega's motion and would "reach out to [him] . . . regarding a stipulation on a briefing schedule." ECF No. 12 at 1. Mr. Brakebill did not make any statement regarding whether the United States would agree that Ortega not be detained pending resolution of this case.

On June 25, 2025, Ortega filed an amended petition for habeas corpus, ECF No. 10, and an amended motion for temporary restraining order, ECF No. 11, to address developments related to *Department of Homeland Security v. D.V.D.*, No. 24A1153, 2025 WL 1732103 (U.S. June 23, 2025). On June 26, 2025, the Court entered an order granting the motion for TRO until July 10, 2025 and setting a briefing schedule. ECF No. 14. The parties then stipulated to an enlargement of the briefing schedule and for the Court's order on the TRO to remain in effect until the Court issued an order following a hearing on the amended motion. ECF No. 17. Defendants filed an opposition on July 10, 2025, ECF No. 18, and Ortega filed a reply on July 17, 2025, ECF No. 19. The Court held a hearing on the motion on July 30, 2025.

## II.     LEGAL STANDARD

The Court applies a familiar four-factor test on both a motion for a temporary restraining order and a motion for preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A plaintiff seeking either remedy "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winters v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is

---

[2] The Court gives notice that Judge Tigar maintains a social relationship with Pamela Johann, the Chief of the Civil Division of the United States Attorney's Office. The United States Attorney has previously assured Judge Tigar that in any case pending before him, Ms. Johann will have no supervisory or other responsibility for the case, and those responsibilities will be transferred to the Acting Civil Chief of the United States Attorney's Office.

3

entitled to such relief." *Winter*, 555 U.S. at 22.

To grant preliminary injunctive relief, a court must find that "a certain threshold showing [has been] made on each factor." *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011) (per curiam). Assuming that this threshold has been met, "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (internal quotation marks omitted).

## III.   DISCUSSION

The Court finds that issuance of a preliminary injunction is justified here because "serious questions going to the merits" exist and the balance of hardships tips sharply toward the plaintiff. *See All. for the Wild Rockies*, 632 F.3d at 1135.

### A.   Likelihood of Success on the Merits

#### 1.   Jurisdiction

In evaluating Ortega's likelihood of success on the merits, the Court first considers whether it has jurisdiction over the dispute. "District courts in the Ninth Circuit treat a lack of subject matter jurisdiction as a failure to show a likelihood of success on the merits." *Malevannaya v. T-Mobile*, No. C18-0886-JLR, 2018 WL 3023085, at *2 (W.D. Wash. June 18, 2018) (citing cases).

The Government raises several jurisdictional arguments. First, it argues that the Court lacks jurisdiction because Ortega "is not in physical custody and is not challenging restraints on his freedom" and thus does not present a valid habeas claim. ECF No. 18 at 13. As Ortega notes, however, the Supreme Court has held that "habeas corpus relief is not limited to immediate release from illegal custody, but . . . is available as well to attack future confinement and obtain future releases." ECF No. 19 at 6 (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973)). Moreover, as Ortega points out, in addition to his requests for habeas relief, "he also pleaded federal question jurisdiction." ECF No. 19 at 7. A district court has authority "both to entertain . . . constitutional challenges and to grant injunctive relief" where a plaintiff's "due process claims arise under the

4

1  Constitution, and [a plaintiff] invoke[s] 28 U.S.C. § 1331, which provides subject matter

2  jurisdiction irrespective of the accompanying habeas petition." *Roman v. Wolf*, 977 F.3d 935, 941

3  (9th Cir. 2020). Accordingly, the Court finds that Ortega presents a valid habeas claim, and even

4  if he did not, the Court maintains federal question jurisdiction over his claims.

5      The Government next argues that 8 U.S.C. § 1252(g) bars this Court's review of Ortega's

6  claims. That section provides that "no court shall have any jurisdiction to hear any cause or claim

7  by or on behalf of any alien arising from the decision or action by the Attorney General to

8  commence proceedings, adjudicate cases, or execute removal orders against any alien under this

9  chapter." *Id.* The Government contends that Ortega's "claims arise from *his concerns about* the

10 execution of his removal order." ECF No. 18 at 14 (emphasis added). That is not the same as

11 challenging "the decision or action . . . to . . . execute [a] removal order[]." 8 U.S.C. § 1252(g).

12 Ortega does not challenge the execution of the final removal order entered against him, which

13 provided for his removal *only to El Salvador* and deferred his removal there in light of his CAT

14 claim. Instead, Ortega challenges his potential detention or removal to a country *other* than El

15 Salvador, for which there currently exists no final removal order. Accordingly, his claims do not

16 challenge the Government's "decision or action . . . to . . . execute removal orders," and Section

17 1252(g) does not bar the Court's review of his claims. *See Reno v. Am.-Arab Anti Discrim.

18 Comm.*, 525 U.S. 471, 486 (1999) (adopting a "narrow reading of § 1252(g)" that excludes from

19 its reach "many other decisions or actions that may be part of the deportation process").

20     The Government next argues that even if Section 1252(g) does not bar review, Sections

21 1252(a)(5) and 1252(b)(9) require a court of appeals to review Ortega's claims rather than this

22 Court. Those sections provide that "the sole and exclusive means for judicial review of an order

23 of removal" is a "petition for review filed with an appropriate court of appeals," 8 U.S.C.

24 § 1252(a)(5), and that such a petition shall be the sole avenue for "[j]udicial review of all

25 questions of law and fact, including interpretation and application of constitutional and statutory

26 provisions, arising from any action taken or proceeding brought to remove an alien from the

27 United States under this subchapter" and "no court shall have jurisdiction, by habeas corpus . . . ,

28 or by any other provision of law (statutory or nonstatutory), to review such an order or such

5

questions of law or fact." 8 U.S.C. § 1252(b)(9).

While broad, the language of these sections was "not intended to 'preclude habeas review over challenges to detention that are independent of challenges to removal orders,'" *V. Singh v. Holder*, 638 F.3d 1196, 1211 (9th Cir. 2011) (quoting H.R. Rep. No. 109-72 at 175), and the Court finds they do not bar review here. *Aden v. Nielsen*, 409 F. Supp. 3d 998 (W.D. Wash. 2019), is instructive. There, habeas petitioner Aden had a final removal order to Kenya, but he could not be removed there because Kenya refused the Government's request for a travel document. *Id.* at 1002. The Government then made plans to remove him to Somalia, and Aden challenged that removal in the absence of a valid removal order to Somalia. *Id.* The court held that Section 1252(a)(5) did not bar Aden's claims because his claims

> are independent of his removal order. Petitioner does not challenge the IJ's determination that he is removable or claim any deficiency in the removal order itself. Rather, he challenges DHS's attempts, *outside* of removal proceedings, to designate Somalia without reopening his proceedings so that an IJ could make the designation in the first instance and/or determine whether petitioner's life or freedom would be threatened in that country. To resolve petitioner's arguments, the Court does not need to review the removal order.

*Id.* at 1006. So too here, where Ortega—like Aden—does not challenge the validity of his final removal order to El Salvador but instead challenges his removal to a third country *without* a removal order there, or his indefinite detention while the Government seeks a third-country removal order. Accordingly, Sections 1252(a)(5) and 1252(b)(g) do not bar this Court's review of Ortega's claims.

The Government next argues that the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA") bars Ortega's claims. FARRA implements CAT and provides that "no court shall have jurisdiction to review the regulations adopted to implement this section, and nothing in this section shall be construed as providing any court jurisdiction to consider or review claims considered under the Convention or this section." FARRA § 2242(d), codified at 8 U.S.C. § 1231 (note). Ortega does not seek review of "the regulations adopted to implement" CAT or "claims considered under" CAT. Instead, he asks not to be detained or removed without first receiving due process as to any CAT claim he might have for a third country to which the Government seeks

6

his removal. FARRA, by its plain language, does not bar this Court's review of such claims.

### 2. Effect of *D.V.D. v. Department of Homeland Security*

The Government also argues that, as a matter of district court discretion and in the interests of judicial economy and consistency, the Court should dismiss this case because Ortega is a class member in *D.V.D. v. Department of Homeland Security*, No. 1:25-cv-10676 (D. Mass.), and his claims are subsumed within that class action litigation. The Government does not make any argument about how *D.V.D.* should factor into the Court's analysis of the instant motion. *See* ECF No. 19 at 17–20. And "a request for court order must be made by motion. As a result, a request for affirmative relief is not proper when raised for the first time in an opposition." *SiteLock LLC v. GoDaddy.com LLC*, No. CV-19-02746-PHX-DWL, 2021 WL 1574660, at *5 (D. Ariz. Apr. 22, 2021) (quotation marks and citations omitted). Accordingly, the Court denies without prejudice the Government's request to dismiss this action in light of *D.V.D.*

### 3. Merits

Ortega presents two claims: (1) that the Fifth Amendment Due Process Clause, the Immigration and Nationality Act ("INA"), the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), and the Administrative Procedure Act ("APA") require the Government to provide meaningful notice and the opportunity to present a fear-based claim before removing him to a third country; and (2) that the Fifth Amendment Due Process Clause and the INA foreclose his detention until his removal is "reasonably foreseeable"—i.e., after he receives notice and opportunity to contest his removal. ECF No. 1 ¶¶ 123–129. The Court finds that Ortega has shown, at a minimum, that serious questions exist as to the merits of each claim.

The Court begins with Ortega's due process claim regarding removal. Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001) (citing *Campos-Sanchez v. I.N.S.*, 164 F.3d 448, 450 (9th Cir. 1999), *superseded by statute on other grounds as stated in Arizmendi-Medina v. Garland*, 69 F.4th 1043, 1053 (9th Cir. 2023)). "A noncitizen must be given sufficient notice of a country of

deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation." *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019) (citing *Mathews v. Eldridge*, 424 U.S. 319, 349 (1976) and *Kossov v. I.N.S.*, 132 F.3d 405, 408 (7th Cir. 1998)). "In the context of country of removal designations, last minute orders of removal to a country may violate due process if an immigrant was not provided an opportunity to address his fear of persecution in that country." *Najjar v. Lunch*, 630 Fed. App'x 724 (9th Cir. 2016).

"At no time during Mr. Ortega's removal proceedings did any party designate a country for removal other than El Salvador." ECF No. 10 ¶ 49. And an IJ ordered that Ortega's removal to El Salvador be deferred pursuant to CAT. *Id.* ¶ 67. Accordingly, there are no countries to which Ortega could currently be removed without his first being afforded notice and opportunity to be heard on a fear-based claim as to that country, as the Fifth Amendment Due Process Clause requires. *See Aden*, 409 F. Supp. 3d at 1009; *Najjar*, 630 Fed App'x 724. Thus, the Court finds there are serious questions as to the merits of Ortega's claim regarding removal.

The Court turns next to Ortega's due process claim regarding detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process Clause of the Fifth Amendment to the United States Constitution] protects." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). In deciding what procedural process is due, the court considers the factors set forth in *Mathews v. Eldridge*: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976). As numerous courts have found, claims like Ortega's satisfy all three *Mathews* factors:

> [P]etitioner here has shown that all three factors under the *Mathews* framework support a pre-deprivation administrative hearing: (1) a substantial private interest in remaining on bond to continue to provide care and financial support for his family; (2) the high risk of erroneous deprivation given the government's position that re-

8

> detention is warranted and the substantial value of the safeguard proposed by petitioner—that is, a pre-deprivation hearing on whether re-detention would be lawful; and (3) the low level of the government's interest in re-arresting petitioner without a hearing before an IJ, where the government's concern that delay in scheduling a hearing could exacerbate flight risk or danger is unsubstantiated in light of petitioner's strong family ties and his continued employment during the pandemic as an essential agricultural worker. Mot. at 24–25.

*Vargas v. Jennings*, No. 20-CV-5785-PJH, 2020 WL 5074312, at *3 (N.D. Cal. Aug. 23, 2020); *see also Jorge M. F. v. Wilkinson*, No. 21-CV-01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (reaching an identical result on similar facts); *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025) (same). And they also find that persons in Ortega's circumstances have a protectable liberty interest in remaining out of custody on bond pending further immigration proceedings. *E.g., Vargas*, 2020 WL 5074312, at *3 (N.D. Cal. Aug. 23, 2020).

In *Diaz*, a recent decision from this district, the court granted a temporary restraining order on very similar facts. In that case, the petitioner-plaintiff had been out of ICE custody for five years, had an upcoming ICE check-in appointment, and feared that he would be detained at that appointment, as he understood had happened to many other noncitizens at similar appointments. *Id.* at *1. After analyzing Diaz's claim under the *Mathews* factors, the court enjoined the Government from detaining Diaz at his check-in appointment. The *Diaz* court found that Diaz's private interest in not being detained was substantial; the risk of erroneous deprivation without a pre-detention hearing was great in light of the questions about whether he could properly be detained at that juncture in his immigration proceedings; and the Government's interest in detention without a hearing was low in light of the fact that Diaz had complied with his supervision requirements for years. *Diaz*, 2025 WL 1676854, at *2; *see Mathews*, 424 U.S. at 335. The same is true here.

Moreover, the Supreme Court, observing that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem," has held that if "removal is no longer reasonably foreseeable" or the detention lasts longer than "reasonably necessary to secure removal," then detention is "no longer authorized by statute." *Id.* at 690, 699–700. In particular,

9

the Supreme Court noted, a noncitizen's potential flight risk or dangerousness to the community could justify detention. *Id.* at 690–91.

Ortega has also shown at least that there are "serious questions" regarding whether his removal is reasonably foreseeable at this juncture or whether detention by ICE would be reasonably necessary to secure his removal. The District Court for the District of New Jersey's recent order in *Tadros v. Noem* is instructive. No. 2:25-cv-4108-EP, 2025 WL 1678501, at *3 (D.N.J. June 13, 2025) (designated as "not for publication"). There, a final removal order had been entered against Tadros, his removal was deferred under CAT, and he remained in compliance with all ICE supervised release provisions for several years—just like Ortega. *Id.* at *3. Tadros nevertheless was detained by ICE on May 7, 2025. *Id.* at *2. The court found that Tadros's release after deferral of his removal in 2009

> suggests he was determined not to present a flight risk, and that the Government was unlikely to find a third country to accept him in the reasonably foreseeable future. Furthermore, Tadros has demonstrated there is no significant likelihood of his removal in the reasonably foreseeable future because fifteen years have gone by without the Government securing a third country for his removal.

*Id.* at *3; *see also Tadros v. Noem*, No. 2:25-cv-04108-EP, Order (D.N.J. June 17, 2025), ECF No. 17 (granting habeas petition). So too here, an immigration judge released Ortega on bond in 2018 because Ortega posed neither a danger nor a flight risk. ECF No. 10 ¶ 51. In the seven years since then, Ortega's conduct has only further supported those findings: he has had no new contacts with law enforcement, has complied with all his parole and ICE supervision requirements, and by the accounts of many is an upstanding citizen and an important contributor to his community. *Id.*; ECF No. 10-4 at 25–80. All of this further supports the conclusion that Ortega's detention is not "reasonably necessary."

The Government argues that Ortega has no basis to assert a procedural due process right for a pre-detention hearing because "he has a final order or removal, and any detention would be to effectuate his removal to a third country." ECF No. 18 at 22. But *Zadvydas* requires that the detention be no longer than "reasonably necessary to secure removal." *Zadvydas v. Davis*, 533 U.S. at 690, 699–700. The Government claims that Ortega cannot show "that his removal is

10

unlikely to occur in the reasonably foreseeable future," ECF No. 18 at 21, but the Court disagrees. As explained above with respect to Ortega's removal claim, there currently exists no country to which the Government could remove Ortega without his first receiving the opportunity to present a fear-based claim as to that country. Ortega has offered sufficient facts at this preliminary stage to show that his detention until the start of that process and during its pendency would be "indefinite"—i.e., that "there is no significant likelihood of removal in the reasonably foreseeable future"—and that, even if his removal were likely in the reasonably foreseeable future, his detention would not be "reasonably necessary" to effectuate his removal. Accordingly, Ortega has shown at least that serious questions exist as to the merit of his claims.

### B.     Irreparable Harm

The Court finds that Ortega is likely to suffer irreparable harm in the absence of a preliminary injunction. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 247, 272 (1976)). Moreover, "[t]he Ninth Circuit has recognized 'irreparable harms imposed on anyone subject to immigration detention' including 'the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to children of detainees whose parents are detained.'" *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (quoting *Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017)). Ortega has made a compelling case that his detention would impose severe burdens—both financially and otherwise—on himself and his family. For one, it would separate him from his wife, who "depends on him for emotional, psychological, and logistical support, particularly now when she is undergoing treatment for a recurrence of breast cancer." ECF No. 1 ¶ 115. For another, Ortega's wife states that she would be unable to afford the mortgage on their home on her salary alone. ECF No. 7-1 ¶ 13.

The Government argues that "'there is no constitutional infringement if restrictions imposed' are 'but an incident of some other legitimate government purpose,'" ECF No. 18 at 26 (quoting *Slaughter v. King Cnty. Corr. Facility*, No. 05-cv-1693, 2006 WL 5811899, at *4 (W.D. Wash. Aug. 10, 2006), *report and recommendation adopted*, 2008 WL 2434208, W.D. Wash.

June 16, 2008)), and that the legitimate government purpose here is "enforcement of a removal order." ECF No. 18 at 26. The Government's arguments are unavailing because, as explained above with respect to Ortega's likelihood of success on the merits, Ortega has provided a sufficient showing that his detention would not be necessary to enforce his removal order, and thus his detention would not further a legitimate government purpose.

### C. Balance of Equities and the Public Interest

Finally, the balance of the equities and the public interest tip sharply in Ortega's favor. These factors "merge where, as is the case here, the government is the opposing party." *Leiva-Perez v. Holder*, 640 F.3d 962, 970 (9th Cir. 2011) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). As the court in *Diaz v. Kaiser* recently concluded:

> The public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering. . . . Without the requested injunctive relief, Petitioner-Plaintiff might be abruptly taken into ICE custody, subjecting both him and his family to significant hardship. Yet the comparative harm potentially imposed on Respondents-Defendants is minimal—a mere short delay in detaining Petitioner-Plaintiff, should the government ultimately show that detention is intended and warranted.

*Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (citation modified). "Moreover, the [Government] cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983).

### D. Security

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The court has "discretion as to the amount of security required, if any," and it "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (citation modified). The Government does not argue that the Court should require Ortega to give security, and indeed, "the [Government] cannot reasonably assert that it is harmed in any

1  legally cognizable sense by being enjoined from constitutional violations," *Zepeda v. I.N.S.*, 753
2  F.2d 719, 727 (9th Cir. 1983). Accordingly, Court finds that no security is required here. *See also*
3  *Diaz v. Kaiser*, 2025 WL 1676854, at *3.

## CONCLUSION

For the reasons explained above, Ortega's motion for preliminary injunction is granted. Respondents-Defendants are enjoined and restrained from arresting, detaining, or removing Ortega without notice and a hearing during the pendency of these proceedings.

**IT IS SO ORDERED.**

Dated: August 6, 2025

_____
JON S. TIGAR
United States District Judge